IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                          )
        v.                )   Criminal No. 06-373
                          )
RUSSELL WAYNE McNEILL, III   )

## OPINION

On October 24, 2006, a grand jury returned a nine-count indictment against Russell Wayne McNeill, III, ("defendant") charging him with numerous armed robberies and firearms offenses. Specifically, the indictment charges him with: (1) the armed robberies of a Uni-Mart convenience store on April 27, 2006 (Count One), the Casa del Sole II pizza shop on April 27, 2006 (Count Three) and the Vallina's Market grocery store on April 28, 2006 (Count Five), all in violation of the Hobbs Act[1]; (2) carrying and brandishing a weapon in commission of each of those robberies (Counts Two, Four and Six); (3) bank robbery and armed bank robbery of a Washington Federal Bank branch on April 29, 2006, (Counts Seven and Eight); and, (4) carrying and brandishing a weapon in commission of that robbery (Count Nine). Currently before the court are numerous pretrial motions filed by defendant.

---

[1]   The Hobbs Act proscribes interference with interstate commerce by threats or violence. 18 U.S.C. §1951.

A motions hearing was held before the court on June 26, 2007, at which time the court took defendant's motions under advisement. For the reasons which follow, each of defendant's pretrial motions will be denied.

## I.   Motion to Dismiss Counts

Defendant's first motion seeks dismissal of Counts One, Three and Five of the indictment, which charge him with the Hobbs Act robberies of a convenience store, pizza shop and grocery store, respectively.  Defendant asserts that all of the foregoing counts, as well as the related Counts Two, Four and Six, which charge him with carrying and brandishing a weapon in commission of those robberies, must be dismissed for lack of jurisdiction because none of the three businesses *substantially* affect interstate commerce. Rather, defendant submits that the Uni-Mart, the Casa del Sole II and Vallina's market all are located in Pennsylvania, are operated locally and are "regional in purpose," and any effect they have on interstate commerce would be "merely tentative and collateral." Defendant's motion will be denied without prejudice.

As an initial matter, the court notes that the government is entitled to endeavor to prove at trial the interstate commerce element of the Hobbs Act counts.  Accordingly, this issue properly should be raised after the government closes its case in chief in a motion pursuant to Fed.R.Crim.P. 29, rather than in a pretrial

2

motion before the government has had an opportunity to meet its burden of proof.

In addition, contrary to defendant's contention that the government must prove that the businesses at issue *substantially* affect interstate commerce, the Third Circuit long has adhered to the rule that the Hobbs Act requires only a *de minimus* effect on interstate commerce, see e.g. United States v. Traitz, 871 F.2d 368, 390 (3d Cir. 1989) and United States v. Cerilli, 603 F.2d 415, 424 (3d Cir. 1979), and this broad standard has been held by all circuits, including this one, to have survived the United States Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995), the only limitation on commerce clause power in recent history. See United States v. Clausen, 328 F.3d 708, 710 (3d Cir. 2003) (reaffirming *de minimus* standard for Hobbs Act robberies, noting that "[e]ven after Lopez, every Court of Appeals to have addressed the issue has held that the Hobbs Act may constitutionally be applied to crimes which do not have a substantial impact on interstate commerce.").

Moreover, neither of the two cases relied upon by defendant, United States v. Woodruff, 941 F.Supp. 910 (N.D.Cal. 1996), and United States v. Collins, 40 F.3d 95 (5ᵗʰ Cir. 1994), actually support his position that the Hobbs Act requires a substantial effect on interstate commerce. The district court's holding in Woodruff, which rejected the *de minimus* standard in light of

Lopez, unanimously was rejected on direct appeal by the Ninth Circuit Court of Appeals, which reaffirmed the *de minimus* standard in all Hobbs Act cases.  See United States v. Woodruff, 122 F.3d 1185 (9th Cir. 1997).  Moreover, the Collins case involved the theft of an individual's car and cell phone, the effect of which was insufficient to satisfy even the broad *de minimus*-effect standard.

The government has indicated that it is prepared to present proof at trial as to each of the three businesses involved in the Hobbs Act robberies which will be sufficient to establish that each has at least a *de minimus* effect on interstate commerce, the recognized standard in this and every circuit.  Accordingly, defendant's pretrial motion to dismiss for lack of jurisdiction will be dismissed without prejudice to defendant to raise the issue again after the government has presented its case in chief should the government fail to meet its *de minimus* burden on the interstate commerce element.

## II.   Motion to Sever Counts

Defendant also has moved for severance of Counts Seven, Eight and Nine of the indictment, the counts relating to the robbery of the bank, from the Hobbs Act robberies and related firearms offenses charged at Counts One through Six, arguing that Counts Seven through Nine improperly were joined with Counts One through

4

Six under Fed.R.Crim.P. 8(a). Alternatively, defendant suggests that even if the counts properly were joined under Rule 8(a), severance nevertheless is warranted under Rule 14 because of prejudice. Defendant's motion to sever will be denied.

Rule 8(a) permits joinder of two or more offenses in a single indictment if the offenses charged are of the same or similar character, or are based on the same act or transaction or are connected with or constitute parts of a common scheme or plan. See United States v. Gorecki, 813 F.2d 40, 41 (3d Cir. 1987).

Defendant argues that the bank robbery counts were improperly joined under Rule 8(a) with the counts relating to the other robberies due to: (1) a variance in time, as the bank was robbed on April 29, 2006, while the other three robberies occurred on April 27 and 28, 2006; and, (2) a variance in location, as the robberies all occurred in different townships. Defendant also suggests that the robberies are not provable by common or similar evidence.

Based on the evidence that the government indicates it will present at trial, the court believes that the bank robbery and the Hobbs Act robberies all were of the same or similar character and/or were part of a common scheme or plan, and therefore all of those offenses properly were joined under Rule 8(a). All four armed robberies allegedly were committed by defendant over a three-day period, each aided and abetted by the same co-actor.

The government indicates that the co-actor will testify that he and the defendant used the same car and the same gun on each occasion and that the modus operandi of the four robberies was identical, with defendant entering the premises and committing the robbery while the co-actor acted as lookout and getaway driver. Finally, the government suggests that the security photographs from three of the robberies depict the robber wearing the same clothes, a black Nike baseball cap and a black jacket, and that eyewitnesses from the fourth robbery will testify that the robber wore those identical clothes in that robbery. Joinder under these circumstances clearly was proper.

Alternatively, defendant contends that even if the offenses properly were joined under Rule 8(a), he nevertheless is entitled to severance of Counts Seven through Nine from the remainder of the counts under Rule 14 on the grounds of prejudicial joinder. Relief from joinder of multiple offenses is authorized pursuant to Fed.R.Crim.P. 14 which provides in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Severance under Rule 14 is to be granted "only if there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants or prevent the jury from making a

6

reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 538-39 (1993). Moreover, a defendant seeking relief under Rule 14(a) has the burden to demonstrate that the failure to grant a severance will result in "real not fanciful" prejudice. <u>United States v. Segal</u>, 534 F.2d 578, 583 (3d Cir. 1976).

Defendant has not, and cannot, demonstrate clear and substantial prejudice sufficient to justify severance under Rule 14. In cases where "evidence of each of the joined offenses would be admissible in a separate trial for the other", concerns about cumulation of evidence and inference of a criminal disposition are "largely absent." <u>United States v. Dileo</u>, 859 F. Supp. 940, 944 (W.D. Pa. 1994).

Here, evidence pertaining to the Hobbs Act counts likely would be admissible in a separate trial of the bank robbery counts under Fed.R.Evid. 404(b) to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Furthermore, as in <u>Dileo</u>, defendant "is represented by experienced counsel, and the risk of confusion is virtually non-existent." <u>Id</u>. Finally, the danger that the jury might confuse the two sets of counts can be prevented with a proper instruction that the jury must give separate consideration to each separate charge. <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993) (limiting instructions often suffice to cure risk of prejudice).

7

Defendant has offered no reason to believe that a jury will not be able to compartmentalize the Hobbs Act evidence from the bank robbery evidence. Accordingly, his motion for severance under Rule 14(a) will be denied.

### III. Motion to Suppress Evidence-Photo Array

Defendant also has moved for suppression of evidence relating to his identification from a photographic array. Thomas Witas, an employee at the Casa del Sole II pizza shop who was working at the time of the robbery, was presented an array containing eight photographs and identified, with "70 % certainty", photograph number six as depicting the robber. Photograph number six was a photo of defendant.

At the suppression hearing the court heard testimony from Witas, as well as from Detective Steven Colucci, the officer who assembled the array, and Sergeant Tim Michael, who was present at the time of the identification, both of the Indiana Township Police Department. Upon due consideration of the testimony of these three witnesses, as well as a review of the photo array at issue, the court is satisfied that the identification procedure in this case did not violate defendant's due process rights.

A due process violation can result when an identification procedure is so suggestive that it undermines the reliability of the resulting identification. Neil v. Biggers, 409 U.S. 188, 196

8

(1972).  Showing a witness a photo array can constitute a denial of due process when police attempt to emphasize the photo of a given suspect, or when the circumstances surrounding the array unduly suggest who a witness should select.  Simmons v. United States, 390 U.S. 377, 383 (1968).  The defendant has the burden of proving that the identification procedure was impermissibly suggestive.  United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003).

When evaluating an identification procedure to determine if it was constitutionally sound, a court must consider: (1) whether the photo array procedure was unnecessarily suggestive; and, (2) if so, whether the corrupting influence of the procedure was so suggestive that it outweighs the reliability of the identification.  Burkett v. Fulcomer, 951 F.2d 1431, 1448 (3d Cir. 1991), citing, Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

With regard to the first consideration, factors that may be relevant in determining whether the photo array procedure was unnecessarily suggestive include: the size of the array, the manner of its presentation by law enforcement officers, and the details of the photographs themselves.  United States v. Wiseman, 172 F.3d 1196, 1208-09 (10th Cir. 1999); United States v. Rosa, 11 F.3d 315, 330 (2d Cir. 1993).

Here, the array was of a sufficient size, eight photographs, and, according to the uncontradicted testimony of all three

9

witnesses, was presented in a thoroughly neutral and relaxed manner free of coercion or duress.   As to the details of the photographs themselves, Detective Colucci testified that he assembled the array with the aid of a computer program which selected photographs of individuals with similar characteristics and features as well as of the same age. Every photograph depicts a white male with the same eye color and with similar facial features, including prominent ears and a bald or shaved head.   In addition, the detectives took great pains to ensure that defendant's one obvious distinction from the other individuals, a prominent tattoo on the side of his neck, was covered from Witas' view at the time of the identification procedure.   The court has studied the photographic array in this case and believes that the individuals depicted in the photographs are of such striking similarity that the array in this case is virtually unassailable.

Defendant's assertions of suggestiveness merely highlight minor physical differences which have no bearing on the reliability of the identification.     For instance, although defendant argues that he "appears" older than the other individuals in the array, Detective Colucci testified that the computer program incorporated defendant's age into the selection process and that all of the individuals were of the same or similar age.   Moreover, the fact that defendant was the only individual in the photographs wearing an earring in his left ear

10

does not render the array unduly suggestive.

It is not required that all photographs in an array be uniform with respect to a given characteristic.   Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986).   See also Tavarez v. LeFevre, 649 F. Supp. 526, 530 (S.D.N.Y. 1986) ("There is no requirement that a suspect in a lineup be surrounded by people identical in appearance.").   Thus, the fact that defendant seems to be the only individual wearing an earring is insufficient, given the totality of the circumstances, to have deprived defendant of his due process rights.   See Lawrence, 349 F.3d at 116 (although the defendant's photo was the only one depicting an individual not wearing a shirt and wearing jewelry, and those factors may have made it stand out, they were not sufficient, given the totality of the circumstances, to deny the defendant due process because the circumstances established the reliability of the identification).

At the suppression hearing, defendant raised the argument that the procedure was unduly suggestive because the police told defendant in advance that they had a suspect whose photograph was contained in the array.   Defendant contends that the fact that the witness was informed that a suspect was included in the array placed undue pressure on the witness to identify someone as the robber, even if he was not certain.   The court finds this argument to be without merit.

AO 72
(Rev. 8/82)

First, defendant's position is belied by the testimony presented at the hearing from all three witnesses who stated that Witas had been presented a prior array on the night of the robbery which contained a photograph of another individual initially identified as a suspect and that Witas was unable to identify that suspect, or any of the other individuals, in the array as the individual who robbed the pizza shop.

Moreover, defendant was invited at the close of the hearing to submit case law in support of the proposition that an identification procedure could be rendered unduly suggestive where the officers inform the witness that an individual they believe to be a suspect is among those depicted in the array. Defendant has not submitted any such authority and the court has found none. Instead, case law is clear that the suggestiveness of an array is to be determined by the totality of the circumstances. Lawrence, supra, 349 F.3d at 116.

Here, there is no indication from the testimony received at the hearing that the officers who conducted the array in this case attempted to emphasize any one particular photograph or unduly suggest who they themselves considered to be a suspect. Nor is there any indication that Witas felt any pressure whatsoever to identify a particular photograph, or indeed any photograph. Based on the totality of the circumstances, the court is convinced that the photographic array in this case was conducted in about as

12

pristine a manner as humanly possible.

Finally, even assuming, *arguendo*, that the photo array in this case was suggestive, the court believes that Witas' identification of defendant nevertheless is reliable. *Biggers*, 409 U.S. at 199. The Supreme Court has found that unnecessary suggestiveness, absent a substantial likelihood of misidentification, is not sufficient to warrant suppression. *Id.*

In evaluating the risk of misidentification, a district court should consider and weigh the following factors: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty demonstrated by the witness at the identification; and (5) the length of time between the crime and the identification procedure. *Id.* at 199-200.

Here, defendant calls into question the reliability of Witas' identification because the array was conducted two months subsequent to the robberies and because Witas identified defendant as the robber with only "70%" certainty. Based upon Witas' testimony, the court is convinced that his identification of defendant was reliable.

First, Witas established himself as an incredibly poised and observant witness who was able to recollect the events of the night in question in astonishing detail. Although the robbery

13

occurred two months before the array, Witas demonstrated a firm recollection of the robbery and was able to identify defendant in part because he recognized certain facial characteristics of defendant, notably his eyebrows, which he recalled from closely observing defendant on the night of the robbery.

Moreover, the fact that Witas stated that he was "70% certain" that defendant was the robber does not render his identification unreliable. First, a slight qualification or less than 100 % certainty is not sufficient to negate the reliability of a witness' identification. See United States v. Emanuele, 51 F.3d 1123 (3d Cir. 1995). In this case, although Witas qualified his identification by stating he was only "70 %" certain, he also testified that his only hesitance was the fact that he was not able to observe the tattoo on defendant's neck. Had he been able to view the tattoo, Witas indicated that he would have been 100 % certain in his identification. Under these circumstances, even assuming that the procedure in this case was suggestive, the reliability of Witas' identification cannot be questioned.

For the foregoing reasons, the court finds that the photographic array in this case was neither unduly suggestive nor led to an unreliable identification.   Accordingly, the court finds that the identification procedure did not violate defendant's due process rights and his motion to suppress the photo array will be denied.

14

### IV.  <u>Motion to Suppress Evidence-DNA</u>

Defendant also has moved to suppress evidence seized pursuant to a search warrant authorizing the taking of a DNA sample[2], alleging that the search violated the Fourth Amendment because the search warrant affidavit was insufficient to establish probable cause for the DNA sample.  In addition, he argues that the good faith exception would be inapplicable under the circumstances of this case to save the deficient warrant.  Upon review of the search warrant affidavit, the court is satisfied that the affidavit was sufficient to establish probable cause for the issuance of the DNA search warrant.

The determination of whether probable cause exists to issue a search warrant is to be determined by a practical and common sense approach.  <u>Illinois v. Gates</u>, 462 U.S. 213 (1983).  <u>Gates</u> provides that the inquiry is to be "a practical, common sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], including the [veracity] and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  <u>Id</u>. at 238-39.

In <u>Massachusetts v. Upton</u>, 466 U.S. 727 (1984), the Supreme

---

[2]  The search warrant authorized the taking of blood/saliva samples from defendant which resulted in a positive match with DNA extracted from a cigarette butt retrieved from the scene of the bank robbery.

AO 72
(Rev. 8/82)

Court emphasized that the reviewing court is not to conduct a "de novo probable cause determination" but is to decide merely "whether the evidence reviewed as a whole provided a substantial basis for the magistrate's finding of probable cause." Thus, the warrant is to be upheld as long as there is a "substantial basis" for a "fair probability" that specified evidence will be found in a particular place.  Id.

In the present case, the affidavit submitted in support of the DNA search warrant application by Special Agent Patrick M. McGlennon of the Federal Bureau of Investigation (FBI) contains the following information: (1) a bank customer at the scene of the bank robbery charged in Counts Seven and Eight of the indictment who had been standing "in close proximity" to the bank robber told police that the robber smelled of cigarette smoke; (2) a partially smoked Newport cigarette was recovered by law enforcement officials near the entrance to the bank; (3) forensic testing of the cigarette butt indicated the presence of DNA; (4) the lab collected a genetic profile of the DNA from the cigarette; (5) the profile was entered into the CODIS national data base for comparison against the DNA of millions of known and unknown offenders; (6) the DNA profile of defendant was obtained for CODIS purposes while he was incarcerated in California; (7) the lab issued a report indicating the DNA profile from the cigarette was consistent with the DNA profile of defendant; and, (8) the CODIS

16

results were preliminary and a known sample of defendant's DNA was required to confirm the results. Based on these facts, the magistrate issued the warrant authorizing the collection of a DNA sample from defendant.

The foregoing information clearly is sufficient to establish probable cause for the issuance of the warrant. Defendant challenges only two of the eight "pieces" of information contained in the affidavit, that the statement from the bank customer was vague and unreliable and that the nature of the CODIS results was unclear. However, the information contained in the affidavit must be viewed as a whole. Viewing the totality of the circumstances, the magistrate was presented with a factual scenario whereby a witness smelled cigarette smoke on the robber and police retrieved at least one cigarette butt from outside the bank. The cigarette butt was analyzed for DNA and a genetic profile was obtained which was consistent with a DNA profile of defendant contained in the CODIS data bank. This match was preliminary only and a warrant was sought to confirm the preliminary results.

The court is satisfied that these preliminary results created a fair probability that the taking of blood/saliva samples from defendant would determine that defendant's DNA matched that found on the cigarette butt. Accordingly, a substantial basis existed for the magistrate judge's finding of probable cause and a search warrant properly was issued. Defendant's motion to suppress the

AO 72
(Rev. 8/82)

DNA search warrant affidavit therefore will be denied.[3]

## V.   Motion to Suppress Evidence-Vehicle Search

Finally, defendant has moved to suppress evidence seized pursuant to a search warrant authorizing the search of a vehicle, specifically, a yellow 1991 Geo Storm, which defendant was driving at the time of his arrest by Fawn Township Police on May 2, 2006, in an unrelated case.  Defendant alleges that the search of this vehicle violated the Fourth Amendment because the search warrant affidavit was insufficient to establish probable cause for the search.  Upon review the court is satisfied that the affidavit was sufficient to establish probable cause for the issuance of the vehicle search warrant.[4]

Special Agent McGlennon's affidavit in support of the vehicle search warrant application contained statements from Matthew Buckels, the alleged get-away driver for the robberies, and Mario Cautela, a roommate of defendant, linking defendant to both the four robberies charged in the Indictment and the vehicle which was the subject of the desired warrant.   In addition, the affidavit

---

[3]    Because the court has found the search warrant to be supported by probable cause, it is unnecessary to consider defendant's argument that the good faith exception does not apply.

[4]    Again,   because the court has found probable cause to support the vehicle search warrant, it is not necessary to address defendant's argument that the good faith exception would be inapplicable under the circumstances of this case to save that warrant.

contains information from a "confidential source" corroborating the statements from Buckels.

The court is satisfied that the information contained in the affidavit was more than sufficient to establish a fair probability that evidence relating to the robberies would be found in the subject vehicle. Both Buckels and Cautela stated that the vehicle at issue in fact belonged to defendant and Buckels stated that the vehicle was used in the robberies in which Buckels himself admitted to participating. Buckels identified defendant from photographs as the individual whom he knew as "Mickey" and with whom he participated in the robberies. Cautela also identified defendant from surveillance photographs from the Uni-Mart robbery as the individual who was residing at his house and who he knew as "Mickey".

Defendant does not contest the information contained in the affidavit received from Buckels or Cautela. Instead, defendant challenges only the statements received from the confidential source on the grounds that the affidavit lacks any information as to the credibility of the confidential source or the reliability of his information. Without such information, defendant contends, probable cause cannot be established.

However, even without any information at all from the confidential source, there was sufficient information contained in the affidavit from Buckels and Cautela to establish probable cause

19

to search the vehicle, and the information received from the confidential source merely was cumulative and corroborative of the information received from Buckels and Cautela. Thus, even assuming *arguendo* that the information from the confidential source could be deemed to be unreliable, there nevertheless is sufficient information set forth in the affidavit aside from that received from the confidential source to create a "fair probability" that evidence of the bank robberies would be found in the vehicle. Accordingly, there is a substantial basis to support the magistrate's determination of probable cause and defendant's motion to suppress evidence seized from the vehicle will be denied.

An appropriate order will follow.

Dated: August 2, 2007

Gustave Diamond
United States District Judge

cc:   James H. Love
      Assistant U.S. Attorney

      Charles M. Schwarz, Esq.
      5th Floor Law & Finance Building
      429 Fourth Avenue
      Pittsburgh, PA  15219

AO 72
(Rev. 8/82)