IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        )
                                )
        v.                      )       Criminal No. 06-373
                                )
RUSSELL WAYNE McNEILL III       )

## O P I N I O N

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 filed by Russell Wayne McNeill III ("petitioner"). For the following reasons, petitioner's motion will be granted in part and denied in part. Petitioner's conviction and sentence only at Count 7 of the Indictment will be vacated. In all other respects, petitioner's motion will be denied.[1]

### Procedural History

On October 24, 2006, a grand jury returned a nine-count indictment against petitioner charging him at Counts 1, 3 and 5 with the armed robberies of, respectively, a Uni-Mart convenience store, the Casa Del Sol II pizza shop and the Vallina's Market grocery store, all in violation of 18 U.S.C. §1951(a); at Counts 2, 4, and 6 with carrying and brandishing a firearm during and in relation to the armed robberies charged in Counts 1, 3 and 5, respectively, all in violation of 18 U.S.C. §924(c)(1)(A)(i) and (ii); at Count 7 with bank robbery in violation of 18 U.S.C. §2113(a); at Count 8 with armed bank robbery in violation of 18 U.S.C. §2113(d); and, at Count 9 with carrying and brandishing a firearm during and in relation to the armed bank robbery charged in Count 8 in violation of 18 U.S.C. §924(c)(1)(A)(i) and (ii).

---

[1] Petitioner's motion to proceed *in forma pauperis* (Document No. 98) will be denied as moot. *In forma pauperis* status permits a litigant to have access to the courts without the pre-payment of filing fees. 28 U.S.C. §1915(a)(1). There is no filing fee for a §2255 petition. Petitioner's motion to strike the government's response to his §2255 petition (Document No. 111) also will be denied.

Petitioner was represented at all stages of the criminal proceedings, from initial appearance through appeal, by court-appointed attorney Charles M. Schwartz, Esq. Prior to trial, Attorney Schwartz filed a number of pretrial motions on behalf of petitioner, including: (1) a motion to dismiss the Hobbs Act counts,[2] and consequently each of the related firearms counts, for lack of jurisdiction as to the interstate commerce element; (2) a motion to sever the bank robbery counts from the Hobbs Act and related firearms counts; (3) a motion to suppress evidence relating to petitioner's identification from a photographic array; (4) a motion to suppress DNA evidence; and, (5) a motion to suppress evidence seized as a result of a vehicle search.

Following a hearing, the court issued an opinion denying all of petitioner's pretrial motions. In particular, as to the motion to dismiss the Hobbs Act counts, the court rejected petitioner's argument that any effect that the three robbed businesses had on interstate commerce would be "merely tentative and collateral." The court noted that the Hobbs Act requires only a *de minimus* effect on interstate commerce, *see* United States v. Urban, 404 F.3d 754 (3d Cir. 2005), and denied petitioner's motion without prejudice to raise the issue after the government had an opportunity to prove at trial that the businesses had at least a *de minimus* impact on interstate commerce.

Petitioner proceeded to trial where the evidence against him was overwhelming as to all four robberies. In total, the government called 24 witnesses and its evidence included, *inter alia*, eyewitness testimony, surveillance videos, photographic identifications and DNA evidence, as well as the testimony of Matthew Thomas Buckels, petitioner's getaway driver. Faced with this damning evidence, Attorney Schwartz's trial strategy involved conceding guilt on the bank robbery charges but contesting the Hobbs Act robberies by arguing that the government had failed to show that the businesses involved had the requisite impact on interstate commerce.

---

[2] 18 U.S.C. §1951 is known as the Hobbs Act.

AO 72
(Rev. 8/82)

At the conclusion of the four-day trial, the jury rejected petitioner's defense and found him guilty of all nine counts charged in the indictment. Petitioner subsequently was sentenced to a term of imprisonment of 1,062 months (88 ½ years), consisting of 78 months at each of counts 1, 3, 5, 7, and 8, all to be served concurrently, and 84 months (7 years) at count 2, and 300 months (25 years) at *each* of counts 4, 6 and 9, all *required* by statute to be served *consecutively* to each other *and* to the terms imposed at counts 1, 3, 5, 7 and 8. *See* 18 U.S.C. §§924(c)(1)(A)(ii), (c)(1)(C)(i) and (c)(1)(D)(ii).

Petitioner filed a direct appeal to the United States Court of Appeals for the Third Circuit, which affirmed petitioner's judgment of conviction and sentence, and the United States Supreme Court ultimately denied petitioner's motion for a writ of certiorari.

## Factual Background

The charges in this case arose from several investigations conducted by various police departments and the FBI into a string of robberies committed in late April of 2006.

The first robbery, resulting in the charges at counts 1 and 2, occurred on April 27, 2006, at a Uni-Mart in Avella, Pennsylvania. After entering the store and obtaining some food items, petitioner approached the counter and asked the female teller for a pack of cigarettes. He then pulled out a handgun and ordered a female customer to her knees, threatening to "put one in [her] leg." Petitioner then left the store with cash, the food items and the cigarettes totaling $122.07. Officers were able to retrieve two surveillance video tapes and some still photos and later were able to determine that the robber of the Uni-Mart matched the description of the robber of Washington Federal Bank in Hickory, Pennsylvania, that occurred two days later. The victims subsequently identified petitioner as the robber through surveillance video and photographs.

AO 72
(Rev. 8/82)

Also on April 27, 2006, petitioner robbed the Casa Del Sole II pizza shop in Indianola, Pennsylvania, resulting in the charges set forth at counts 3 and 4. Officers learned that petitioner had entered the pizza shop, pulled out a semi-automatic handgun and demanded money. An employee turned over some cash from the register, then, upon petitioner's demand for more, gave him a bank deposit bag containing $85 for a total of $150. Petitioner angrily left when the employee indicated there was no more. Pizza shop employees identified petitioner through a photographic array and surveillance videos.

On April 28, 2006, petitioner robbed Vallina's Market in Langeloth, Pennsylvania, resulting in the charges set forth at counts 5 and 6. A female clerk informed officers that petitioner walked into the store, displayed a gun in the waistband of his pants and demanded all the money in the register. The clerk gave him $460 and petitioner left the store. The clerk later identified petitioner as the robber of Vallina's through surveillance video and photos from other robberies.

On April 29, 2006, petitioner robbed the Washington Federal Bank in Hickory, Pennsylvania, resulting in the charges set forth at counts 7, 8 and 9. Petitioner entered the bank wearing a dark Nike baseball cap and approached a teller. He grabbed $1,000 from the teller station then displayed a black semi-automatic handgun, pointed it at the teller and demanded more money. The teller gave petitioner the money from her drawer, as did two other tellers. Petitioner fled the scene with $5,909, $200 of which was bait money. Officers were able to obtain a description of petitioner from the victims and other witnesses.

Using the bank surveillance videos and still photos, officers made a comparison and determined that the bank robber bore a strong resemblance to the robber of the other three businesses. Based on these videos and photos, victims from the other robberies also were able to identify petitioner as the robber of their establishments.

## Petitioner's §2255 Motion

Petitioner's pending §2255 motion raises a number of grounds for relief: (1) that he was improperly sentenced for both bank robbery at count 7 and armed bank robbery at count 8; (2) that he improperly was charged with, convicted of, and sentenced for four separate §924(c) counts when he committed only a single "crime spree;" (3) that counts 2, 4, 6 & 9 are multiplicitous; (4) that he improperly was sentenced under §924(c)(1)(C) for "second or subsequent convictions" when he committed only one continuing offense; (4) that Attorney Schwartz was ineffective during plea bargaining; (5) that Attorney Schwartz was ineffective at trial, at sentencing, and on direct appeal; (6) that the court's jury instructions violated due process; and, (7) that the jury deliberations were "tainted."

The government filed a response to petitioner's motion and petitioner filed a reply. On January 7, 2015, the court held an evidentiary hearing, at which both petitioner and Attorney Schwartz testified, as to petitioner's claim that he received ineffective assistance of counsel during plea bargaining. The court also heard testimony regarding Attorney Schwartz's trial strategy. All of petitioner's claims now are ripe for adjudication.

As an initial matter, petitioner has raised one meritorious claim - that his conviction and sentence for both bank robbery at count 7 and armed bank robbery at count 8 violate the double jeopardy clause. The government concedes that bank robbery is a lesser included offense of armed bank robbery and that defendant's conviction and sentence at count 7 must be vacated. *See* United States v. Cesare, 581 F.3d 206 (3d Cir. 2009)(bank robbery is lesser included offense of armed bank robbery and the district court's entry of dual convictions for both violated double jeopardy, requiring that the conviction and sentence on the bank robbery count be vacated). Accordingly, petitioner's conviction and sentence at count 7 only will be vacated.

Upon due consideration of petitioner's other grounds for relief the court finds all to be without merit for the reasons discussed herein. In light of the testimony received at the evidentiary hearing, petitioner has failed to demonstrate that Attorney Schwartz was ineffective either in plea bargaining or in regard to his trial strategy. As to petitioner's remaining claims, the record affirmatively establishes as a matter of law that petitioner is not entitled to relief under §2255 on any of them.

## **Standard of Review**

A federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a).

As a collateral challenge, a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence. United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014). Accordingly, relief under § 2255 is available only when "the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and ... 'present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent.'" Davis v. United States, 417 U.S. 333, 346 (1974)(*quoting* Hill v. United States, 368 U.S. 424, 428 (1962)).

## Discussion

### A.    Grounds relating to §924(c)

Petitioner has raised a number of claims relating to his convictions and sentences on four separate counts of violating 18 U.S.C. §924(c)(1)(A). The crux of each of these claims is that he improperly was charged with, convicted of, and sentenced for four separate violations of §924(c) when all of his conduct was part of a continuous crime spree which he alleges amounts to only a single crime. However, because petitioner properly was charged with four separate predicate offenses for crimes of violence - three Hobbs Act robberies and one armed bank robbery - he also properly was charged with four separate violations of §924(c), each relating to one of those four separate predicate offenses  United States v. Diaz, 592 F.3d 467, 471 (3d Cir. 2010)(the proper "unit of prosecution" for §924(c) is the underlying predicate crime)..

As an initial matter, as the government aptly notes, petitioner failed to raise any challenge to his 924(c) convictions on direct appeal. The United States Supreme Court has held that "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' *and* actual 'prejudice', *or* that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (emphasis added). Prejudice must be substantial, such that the integrity of the entire trial was infected. *See* United States v. Frady, 456 U.S. 152, 170 (1982).

Here, petitioner asserts ineffective assistance of counsel as "cause" for his failure to raise any §924(c) claims on direct appeal. However, because petitioner's §924(c) claims have no merit, petitioner cannot establish that his counsel was ineffective in failing to raise them, nor the prejudice

that would be necessary to overcome his procedural default of these claims under <u>Bousley</u>.[3]

18 U.S.C. §924(c)(1)(A) provides in pertinent part:

> " ... any person who, during and in relation to any crime of violence ...uses or carries a firearm, or who, in furtherance of any such crime possesses a firearm, shall, in addition to any punishment provided for such crime of violence ... (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years."

Petitioner was charged at count 2 with using and carrying a firearm during and in relation to the crime of violence charged at count 1, the armed robbery of the Uni-Mart. At count 4, he was charged with using and carrying a firearm during and in relation to the crime of violence charged at count 3, the armed robbery of the Casa del Sol pizza shop. At count 6, he was charged with using and carrying a firearm during and in relation to the crime of violence charged at count 5, the armed robbery of the Vallina's grocery store. And finally, at count 9, he was charged with using and carrying a firearm during and in relation to the crime of violence charged at count 8, the armed bank robbery.

At trial, the jury found defendant guilty of each of the four separate predicate crimes of violence as well as the four corresponding §924(c)(1)(A) counts. By special interrogatory, the jury also found that defendant brandished a firearm during each robbery. Accordingly, by statute, petitioner was sentenced to 84 months (7 years) at count 2, and 300 months (25 years) at *each* of counts 4, 6 and 9, all *required* by statute to be served *consecutively* to each other *and* to the

---

[3] Nor has petitioner made any showing of actual innocence. "'[A]ctual innocence'" means factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623. In other words, "'actual' innocence ... means that the person did not commit the crime." <u>United States v. Garth</u>, 188 F.3d 99, 107 (3d Cir. 1999)(citation omitted). "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" <u>Id</u>. (*quoting* <u>Schlup v. Delo</u>, 513 U.S. 298, 327-28 (1995). Here, petitioner has not asserted actual innocence. Moreover, the United States Court of Appeal for the Third Circuit held on direct appeal that "a rational trier of fact could conclude that the businesses in question purchased goods and services from out-of state and that [petitioner] stole from these businesses."

concurrent 78 month terms imposed at counts 1, 3, 5, 7 and 8. *See* 18 U.S.C. §§924(c)(1)(A)(ii), (c)(1)(C)(i) and (c)(1)(D)(ii).

1.    Ambiguity

Petitioner's first §924(c) argument is that he should have only been sentenced for one violation of §924(c)(1) because he carried a firearm in the course of a single crime spree, and that sentencing him for multiple violations of §924(c)(1) based on that single crime constitutes double jeopardy. Petitioner relies on Diaz, *supra*, in which the court held that the imposition of *two* consecutive §924(c)(1) sentences for possession of a firearm in furtherance of a drug trafficking crime when the defendant was convicted of only *one* predicate drug trafficking crime violated double jeopardy. 592 F.3d at 474.

Diaz, however, involved the question of whether the defendant committed more than one §924(c) violation when only one predicate drug trafficking crime had been proven. Id. at 473. The court held that the statute was ambiguous on that question and applied the rule of lenity in concluding that the defendant could only be sentenced for one §924(c) offense when there was only one predicate offense. Here, however, the government proved *four* separate predicate crime-of-violence offenses, and further proved that petitioner brandished a firearm during *each* of those four separate crimes. Accordingly, Diaz is inapposite to petitioner's case.

2.    Multiplicity

Petitioner's second §924(c) argument is related to his first in that he argues that the indictment was multiplicitous because all of the §924(c) counts relate to a single crime spree. Accordingly, he argues that he only committed one violation of that statute, but improperly was charged with that one violation in four separate counts. This argument also is without merit.

AO 72
(Rev. 8/82)

Indictments charging a single offense in different counts are multiplicitous. United States v. Haddy, 134 F.3d 542, 548 n. 7 (3d Cir. 1998). Multiplicity may result in multiple sentences for a single offense in violation of double jeopardy or may otherwise prejudice a defendant. Id.

Here, however, petitioner was not charged with the same offense in four different counts. Rather, he was charged with four separate §924(c) counts related to four separate predicate offenses for crimes of violence, each involving a different victim at a different place and at a different time.

Petitioner argues that because this court found, in denying petitioner's motion to sever, that all of the robberies were part of a "common scheme or plan" that they all therefore constitute a single offense. This is not so. A "common scheme or plan" can, and in this case did, involve different offenses. In fact, it was because all four robberies were part of a "common scheme or plan" that the court found that the four *separate offenses* - the four robberies - properly were joined in a single indictment. Fed.R.Crim.P. Rule 8(a) permits joinder of *two or more offenses* in a single indictment if the *offenses* charged are of the same or similar character, or are based on the same act or transaction or are connected with or constitute parts of a common scheme or plan. *See* United States v. Gorecki, 813 F.2d 40, 41 (3d Cir. 1987).

Moreover, the Third Circuit Court of Appeals unequivocally has held that even crimes occurring as part of the same underlying occurrence may constitute separate predicate offenses if they properly are charged as separate crimes, and that each may be a separate predicate for a §924(c)(1) conviction. United States v. Casiano, 113 F.3d 420, 426 (3d Cir. 1997). Here, petitioner committed four separate crimes of violence that all properly were charged as separate offenses. Accordingly, they all properly may serve as predicate offenses for separate §924(c)(1) counts, regardless of whether they were part of a "common scheme or plan." Accordingly, petitioner's claim that the indictment was multiplicitous is without merit.

AO 72
(Rev. 8/82)

3. <u>Sentence</u>

Petitioner also alleges that he improperly was sentenced under 18 U.S.C. §924(c)(1)(C)(i) to three consecutive 25-year mandatory terms of imprisonment for three "second or subsequent convictions" of §924(c)(1)(A). Again, petitioner's argument is based on the same flawed premise that he only committed one violation of §924(c)(1)(A) because he only made one decision to carry a gun during the course of a single crime spree.

18 U.S.C. §924(c)(1)(C)(i) provides that "[i]n the case of a second or subsequent conviction under this subsection, the person shall-be sentenced to a term of imprisonment of not less than 25 years."

It long has been established that the enhanced sentencing for a "second or subsequent conviction" under §924(c)(1)(C) applies where, as here, the conviction for the first and for the second and subsequent §924(c) offenses are entered simultaneously. *See* <u>Deal v. United States</u>, 508 U.S. 129 (1993). In <u>Deal</u>, the defendant was charged in one multi-count indictment with multiple offenses arising from six armed robberies. A jury convicted the defendant of, *inter alia*, six counts of carrying and using a firearm during the robberies in violation of §924(c)(1). The district court sentenced the defendant to five years in prison on the first count and to the enhanced penalty of twenty years (the prescribed statutory penalty at that time) on each of the other five counts. On appeal, the defendant argued there had been only one entry of final judgment in his case, thus there was no "second or subsequent conviction" to trigger the enhanced sentence. The Supreme Court rejected the defendant's argument, holding that, although the defendant's subsequent five convictions were based on counts in a single indictment and the counts were joined for trial, each of those convictions constituted a "second or subsequent conviction" within the meaning of §924(c). <u>Deal</u>, 508 U.S. at 132-36.

Consistent with <u>Deal</u>, the Third Circuit Court of Appeals also has held that enhanced sentencing for a "second or subsequent conviction" applies where the convictions for the first and the subsequent §924(c) offenses are entered simultaneously. *See* <u>United States v. Stewart</u>, 283 F.3d 579, 581 (3d Cir. 2002). Furthermore, courts after <u>Deal</u> uniformly have required the imposition of consecutive sentences for second and subsequent convictions on multiple §924(c)(1) counts "notwithstanding a factual nexus between the predicate offenses." <u>Casiano</u>, 113 F.3d 425.

In light of binding precedent from the United States Supreme Court and the Third Circuit Court of Appeals, petitioner's challenge to the imposition of the three mandatory 25-year consecutive sentences for his "second and subsequent" convictions under §924(c)(1)(A) and (C) is unavailing. Although the court recognizes this is a severe penalty, we are bound by it and, "[i]t is for Congress to ameliorate the result of application of the statute according to its terms, if it deems it too harsh." <u>Id.</u> at 426.

**B.**     <u>**Grounds alleging Ineffective Assistance of Counsel**</u>

Defendant has raised a number of claims of ineffective assistance of counsel against Attorney Schwartz. Specifically, he contends that Attorney Schwartz was ineffective: (1) in plea negotiations; (2) at trial; (3) at sentencing; and, (4) on direct appeal. At the hearing held on January 7, 2015, the court heard evidence relating to petitioner's claims of ineffective assistance during plea negotiations and in regard to Attorney Schwartz's trial strategy.

The standards for evaluating ineffective assistance of counsel claims are well-established. In order to prevail on a claim that counsel rendered constitutionally ineffective assistance a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; <u>and,</u> (2) that the deficient performance actually prejudiced the defense. <u>Strickland</u>

v. Washington, 466 U.S. 668, 687 (1984). A petitioner must establish <u>both</u> prongs of the inquiry, for "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." <u>Id.</u> at 700.

The first prong requires the petitioner to demonstrate that counsel's performance was deficient. The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. <u>Id.</u> at 689. The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. <u>Id.</u> at 690. The petitioner has the burden of overcoming the strong presumption that counsel was effective. <u>Id.</u> at 689.

If deficient performance is established, the second prong of the <u>Strickland</u> analysis requires a showing that counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To satisfy this test, a petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. <u>Id.</u> at 694.

"[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Id.</u> at 696-697.

Applying these standards to petitioner's claims in the present case, the court finds that petitioner has failed to establish ineffective assistance of counsel at any stage of the proceedings.

1.    Plea Negotiations

Petitioner first claims that Attorney Schwartz was ineffective during plea negotiations. Specifically, he contends that Attorney Schwartz "insisted" that he go to trial because he "saw holes in the government's case" and was convinced that the government could not establish the interstate commerce element of the Hobbs Act charges. Petitioner alleges that had Attorney Schwartz not "misrepresented" the law and "instead had discovered and relayed the truth," he would not have gone to trial and would have entered a guilty plea.

In its response, the government indicated that petitioner in fact was offered a plea deal whereby he would enter a guilty plea to <u>one</u> of the predicate counts and <u>two</u> of the §924(c)(1) counts, which would have resulted in a sentence of 38 ½ years - consisting of 78 months, the low end of the guideline range for one predicate count, plus a 7-year mandatory consecutive sentence on the first §924(c)(1) count and a 25-year mandatory consecutive on the second §924(c)(1) count - instead of the 88 ½ years that he actually received.

In his reply, petitioner reiterated his allegation that Attorney Schwartz informed him that the Hobbs Act charges would be dismissed as a matter of law and that he would be "facing no more than 10 years if he lost at trial." Petitioner avers that "had he been appraised of the Government's evidence and his actual chances of success at trial; had he been informed of the sentence he would probably receive ...; had he been informed that a plea offer existed; had he been informed that [Attorney Schwartz] was going to admit to ... the bank robbery charges; and, that if he did not accept the plea offer he was facing ... 88 years," he would not have gone to trial and would have accepted the government's plea offer.

The United States Supreme Court recently has re-emphasized that the Sixth Amendment right to counsel extends to the plea bargaining process and that defendants are entitled to the effective assistance of competent counsel during plea negotiations. Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399 (2012) and Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 1384 (2012). In Frye, counsel failed to inform the defendant of a favorable plea offer, which subsequently lapsed, resulting in the defendant ultimately accepting a less favorable plea deal. In Lafler, counsel's incorrect advice resulted in the defendant rejecting a favorable plea offer, which led to a conviction following trial and a significantly higher sentence than had been offered in the rejected plea.

Here, petitioner alleges that Attorney Schwatz's incorrect advice resulted in him rejecting the government's plea offer for a 38 ½ year sentence, significantly lower than the 88 ½ year sentence he received as a result of rejecting the plea and gong to trial.[4]  However, the testimony adduced at the hearing belies petitioner's allegations.

First, petitioner himself testified that when Attorney Schwartz first presented the offer to plead to one predicate offense and two §924(c)(1) counts,[5] petitioner's response was a "a big negative." And although petitioner initially testified that he was unaware that he could be facing a sentence of up to 88 years if he was convicted of all counts at trial, he later conceded that by the

---

[4]  Although petitioner suggested in his reply brief that he was not aware of the plea offer, the testimony at the hearing conclusively demonstrated that Attorney Schwartz did present the 38 ½ year offer to petitioner and discussed it with him at length. Accordingly, petitioner's sole claim in this case falls under Lafler based on his allegation that incorrect legal advice caused him to reject a favorable plea.

[5]  There was some uncertainty at the hearing as to whether the plea offer was to one predicate offense and two §924(c)(1) counts or to two predicate offenses and two §924(c)(1) counts. Attorney Schwartz testified he could not recall. In any event, under either scenario, the offer would have resulted in a sentence of a 7-year mandatory minimum sentence on the first §924(c)(1) and a 25-year consecutive mandatory minimum on the second, with both of those consecutive to a likely guideline sentence on one predicate offense. If a second predicate offense had been involved, it would have resulted in a concurrent sentence with the other predicate offense. In essence, under either scenario, the plea offer was for a term of imprisonment of 78 months at the low end of the advisory guideline range for a predicate offense (or two concurrent predicate offenses), plus 32 years mandatory consecutive for the two §924(c)(1) counts, for a total of around 38 ½ years.

AO 72
(Rev. 8/82)

time of trial he had "studied it more" and was aware it was possible he could be facing a sentence of over 80 years. He also indicated that he was unwilling to take a plea deal to over 30 years when Attorney Schwartz was "telling him he could beat 75 of that." Finally, petitioner testified that although he was aware by the time of trial that he possibly was risking over 80 years, he was still unwilling to take the plea offer because at that point, in light of the 38 ½ year offer, in his mind "there's no difference."

Attorney Schwartz also testified at the hearing. He first testified that he went over the possible penalties with petitioner "many times." He acknowledged that he believed a plea offer for a 38 ½ year sentence was unfair and that he tried to convince Assistant United States Attorney James Love to make a better offer. Significantly, Attorney Schwartz testified that at no point did petitioner ever express a willingness to take the 38 ½ year offer and that he went to trial because they had no option as petitioner did not want to take a plea to 38 ½ years. He also stated that he advised petitioner neither to take the plea or to go to trial, rather, they went to trial because petitioner did not want to take a plea to 38 ½ years.

Attorney Schwartz further testified that petitioner was aware that the evidence against him was very strong and that he "absolutely" was candid with petitioner that the case possibly was a losing proposition for trial. He testified unequivocally that he never "insisted" that petitioner go to trial because there was a good chance, or any chance, that the Hobbs Act counts would fall as a matter of law. Rather, he told petitioner that if there was any chance of defending the case, it would be on the interstate commerce element of the Hobbs Act counts, but it would be as a matter of evidence, not a matter of law. He emphasized that he did not advise petitioner that he should go to trial because they were going to "win" on a Hobbs Act defense and indicated that "the last thing" he would have told him was to go to trial because they could beat the Hobbs Act counts.

AO 72
(Rev. 8/82)

He explicitly stated, "I didn't say to him you shouldn't take this deal because we're going to win this case under some or any theory."

Based on the testimony, the court finds that petitioner has failed to establish any deficiency in Attorney Schwatz's performance with regard to plea negotiations. The testimony establishes that Attorney Schwartz was candid with petitioner in regard to the potential penalties he was facing if he was convicted at trial and with regard to petitioner's chances for success at trial. Petitioner himself testified that by the time of trial he was aware of the possibility that he could be facing 88½ years if convicted at trial. Nevertheless, both petitioner and Attorney Schwartz stated that petitioner had no interest in taking the 38 ½ year deal that was offered.

Based on the evidence, it is clear to the court that petitioner was not willing to take the plea deal that was offered by the government and his decision to go to trial was not the result of incorrect or misleading advice from Attorney Schwartz regarding the plea offer or petitioner's chances of success at trial. Accordingly, petitioner's claim of ineffective assistance of counsel during plea negotiations fails.


2.    Trial

Petitioner alleges that Attorney Schwartz was ineffective at trial by conceding petitioner's guilt on the charges relating to the bank robbery and instead focusing on trying to "beat" the Hobbs Act counts. Upon due consideration of the testimony of Attorney Schwartz at the hearing, the court finds that petitioner has failed to establish that Attorney Schwartz's trial performance was deficient.

As already noted, the assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable. Strickland at 690. Thus, the court begins with the recognition that a defense

counsel's strategic decisions are reviewed with a strong presumption of correctness. <u>Sistrunk v.</u> <u>Vaughn</u>, 96 F.3d 666, 670 (3d. Cir. 1996). Courts should be highly deferential to reasonable strategic decisions and guard against the temptation to engage in hindsight. <u>Marshall v. Hendricks</u>, 307 F.3d 36 (3d. Cir. 2002).

Attorney Schwartz testified at the hearing as to the rationale behind his decision to concede guilt on the bank robbery charges. Specifically, he acknowledged that the government's evidence on the bank robbery in particular was very strong and included DNA evidence. Accordingly, his strategy was to acknowledge the bank robberies but to try to avoid the mandatory sentences on the other §924(c) counts related to the three Hobbs Act counts by arguing that the Hobbs Act did not apply because the government could not prove the interstate commerce element.

Based on the circumstances, the court cannot find that Attorney Schwartz's decision was unreasonable. Faced with overwhelming evidence of petitioner's guilt, Attorney Schwartz made a tactical decision to attempt to avoid a "losing proposition" by conceding guilt on the bank robbery counts while attempting to defend the remaining counts. The court will not second guess counsel's decision or engage in hindsight because the strategy ultimately was not successful. Importantly, the court also notes that Attorney Schwartz testified that he discussed his proposed strategy with petitioner before trial and that petitioner did not express any objection to it.

Accordingly, the court finds that trial counsel's performance was not deficient as petitioner has not overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" in regard to trial strategy. *See* <u>Strickland</u>, 466 U.S. at 689.

Moreover, even if petitioner could demonstrate that trial counsel's performance was deficient in some respect, he has not established that the result of the trial would have been different, as the totality of the evidence against petitioner was overwhelming, and petitioner has

not advanced any alternative trial strategy which may have altered the verdict of guilty. Accordingly, petitioner's claim of ineffective assistance of counsel at trial must fail.

3.    Sentencing

Petitioner also argues that Attorney Schwartz was ineffective at sentencing. In this regard, petitioner contends that Attorney Schwartz should have argued at sentencing for a sentence within the advisory guideline range of 78-97 months and alleges that Attorney Schwartz "failed to understand the basic mechanism of the guidelines." This argument is without merit.

Although petitioner alleges that Attorney Schwartz should have argued for a guideline sentence, as already discussed, the sentence in this case was driven by the mandatory minimum, consecutive sentences required by 18 U.S.C. §924(c)(1)(A)(ii) and (C)(1). In fact, petitioner did receive sentences of 78 months, the low end of the guideline range, at counts 1, 3, 5, 7 (now vacated) and 8, all to run concurrently. However, it was the seven-year mandatory minimum sentence at count 2, and the three 25-year mandatory minimum sentences at counts 4, 6 and 9, all required to be served consecutively, which resulted in petitioner's 1,062 month sentence.

Moreover, contrary to petitioner's allegation that Attorney Schwartz did not understand the "mechanism" of sentencing, the transcript of the sentencing hearing establishes that Attorney Schwartz was well aware that petitioner's sentence was dictated by statute. (Document No. 91, Transcript of Sentencing Hearing at 4) ("we stand before the Court this morning cognizant of the fact that the sentence to be imposed is controlled by statute. It is our understanding that the Court has no discretion with respect to the mandatory sentences to be imposed.").

Accordingly, the court finds that Attorney Schwartz's performance at sentencing was not deficient and that petitioner cannot show that any argument that Attorney Schwartz did not make at sentencing would have resulted in a lesser sentence.

4.     Appeal

Petitioner also contends that Attorney Schwartz was ineffective on direct appeal by raising only two "frivolous" issues and failing to raise the issues petitioner now raises in his §2255 motion. This argument likewise has no merit.

Due process entitles a criminal defendant to the effective assistance of appellate counsel on direct appeal, Evitts v. Lucey, 469 U.S. 387, 394 (1985), and the two-prong Strickland standard likewise applies to a claim that appellate counsel was ineffective. Smith v. Robbins, 528 U.S. 259, 285 (2000).

However, the right to appellate counsel "is limited to the first appeal as of right ... and the attorney need not advance every argument, regardless of merit, urged by the appellant." Evitts, 469 at 394. "Neither [Anders v. California, 386 U.S. 738 (1967)] nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52.

Here, Attorney Schwartz argued on direct appeal that this court erred in denying petitioner's motion to dismiss the Hobbs Act counts for lack of jurisdiction and in denying his motion to sever

the bank robbery counts from the Hobbs Act counts. The Court of Appeals for the Third Circuit determined that this court did not err in denying either of petitioner's motions.

Attorney Schwartz obviously made a tactical decision to pursue on appeal the arguments which, in his professional judgment, he deemed to have the greatest chance for success, and this court will not second-guess that decision. The fact that the arguments that Attorney Schwartz chose to make ultimately were not successful does not render them frivolous nor his decision to raise them deficient performance.

Nor can petitioner show prejudice from Attorney Schwartz's decision not to raise the issues petitioner now advances in his §2255 motion because, as explained herein, none of those issues has merit[6] and there is little likelihood that the appellate court would have reversed and ordered a new trial had they been raised on direct appeal. United States v. Mannino, 212 F.3d 835, 844 (3d Cir. 2000)(test for prejudice under Strickland is whether the court of appeals likely would have reversed and ordered a remand had the issue been raised on direct appeal not whether the petitioner likely would prevail upon remand).

Because petitioner can establish neither deficient performance of Attorney Schwartz on direct appeal, nor prejudice, this claim for §2255 relief also must be denied as a matter of law.

## C.   **Miscellaneous Grounds**

Petitioner has raised two additional claims which relate to the court's jury instructions and jury deliberations. Again, petitioner failed to raise either of these claims at trial or on direct appeal. Because the jury instructions were not erroneous, and there is no evidence that the jury

---

[6]    The only meritorious claim that petitioner has raised in his §2255 motion is that he improperly was sentenced both for armed bank robbery and the lesser included offense of bank robbery. Because this court will be vacating the conviction and sentence on the bank robbery count (count 7), any prejudice that may have arisen from Attorney Schwartz's failure to raise that issue on direct appeal has been alleviated.

AO 72
(Rev. 8/82)

deliberations were "tainted," petitioner can establish neither ineffective assistance as cause to raise these issues nor actual prejudice under Bousley.

1.     Jury Instructions

Petitioner alleges that the court erred by instructing the jury that defense counsel had conceded petitioner's guilt on the three bank robbery related counts. He argues that the court's instructions thereby created a "mandatory conclusive presumption of guilt" in violation of his right to due process. *See* Carella v. California, 491 U.S. 263 (1989)(jury instructions relieving government of burden of proving beyond a reasonable doubt every element of a charged offense violate due process). Because petitioner did not object to the court's jury charge on this ground at trial, nor raise this claim on direct review, he is procedurally barred from raising it for the first time in a §2255 motion. Moreover, petitioner's claim is belied by the record.

A review of the court's instruction here establishes that the court did <u>not</u> instruct the jury that they were obliged to find defendant guilty of the bank robbery charges because defense counsel conceded petitioner's guilt on those counts. To the contrary, the court instructed the jury as follows:

> "I realize that counsel for defendant has indicated what he thought would be an appropriate verdict in this case, including the finding of the defendant guilty as to counts seven, eight and nine. *It is still your responsibility to consider the evidence with regard to those counts and the court's instructions with regard to those counts and to arrive at your verdict with regard to those ...* you may obviously consider the defendant's counsel's concession in evaluating the evidence in this case. *But you evaluate the evidence in this case and come to your independent determination with regard to counts seven, eight and nine.*"

(Tr., Proceedings held on October 4, 2007, at 34-35) (emphasis added).

It is well-settled that "[j]ury instructions 'may not be evaluated in artificial isolation,' but rather 'must be evaluated in the context of the overall charge.'" United States v. Berrios, 676 F.3d

118, 137 (3d Cir. 2012) (citations omitted). Moreover, it is within the sound discretion of the trial judge to review the evidence and comment on the legal theory of the parties when instructing the jury. United States v. Glasser, 750 F.2d 1197, 1207 (3d Cir. 1984).

Here, reading the charge as a whole, the court is satisfied that there is no possibility that the jury believed they were bound to find defendant guilty at counts 7, 8 and 9. Rather, they specifically were instructed that they were to evaluate the evidence and arrive at their own independent determination as to defendant's guilt as to those counts. Because the charge was proper, petitioner cannot show prejudice from the failure of his attorney to raise this meritless challenge on direct appeal, nor the prejudice that would be necessary to overcome his procedural default of this claim under Bousley. Accordingly, petitioner is not entitled to §2255 relief on this claim.

### 2.    Jury Deliberations

Petitioner's final ground for relief alleges that the jury deliberations were "tainted" due to the allegedly multiplicitous indictment and the court's erroneous jury instructions, which suggested to the jury that defendant's "alleged criminal activity was of greater scope and gravity than it actually was." This argument is meritless and warrants little discussion.

As already discussed, the indictment in this case was not multiplicitous and there was no error in the court's jury instructions. Moreover, petitioner has advanced nothing beyond mere conjecture to show that the jury was "terribly confused" in its deliberations. As already noted, the evidence against defendant in this case was overwhelming and was more than sufficient to support the jury's finding of guilt at every count of the indictment. Accordingly, petitioner clearly is not entitled to §2255 relief based purely on speculative allegations related to the jury's deliberations.

AO 72
(Rev. 8/82)

### Certificate of Appealability

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered a determination of whether a certificate of appealability should issue also shall be made. The issuance of a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause).

Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of a denial of the constitutional right." 28 U.S.C. §2253(c)(2). As this court's foregoing discussion makes clear, petitioner has failed to make a substantial showing of a denial of a constitutional right. Accordingly, this court determines that a certificate of appealability should not issue in this case. See Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

For the reasons set forth above, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 fails to raise a meritorious claim and must be denied as a matter of law.

An appropriate order will follow.

_Gustave Diamond_
Gustave Diamond
United States District Judge

Date: _March 26, 2015_

cc:     Michael Leo Ivory
Donovan Cocas
Assistant United States Attorneys

James J. Brink, Esq.
428 Forbes Ave.
Ste. 1600
Pittsburgh, PA 15219

Russell Wayne McNeill III